RYAN G. WELDON
KARLA E. PAINTER
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. North, #300
Great Falls, MT 59401
Phone:       (406) 761-7715
FAX:         (406) 453-9973
Email:       Ryan.Weldon@usdoj.gov
             Karla.Painter@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLARD WILSON WHITE III,<br><br>Defendant. | CR 18-97-GF-BMM<br><br><br><br>UNITED STATES' TRIAL BRIEF |

## INTRODUCTION

On November 16, 2018, the Grand Jury indicted Willard Wilson White III with three counts—Wire Fraud, Theft from an Indian Tribal Organization, and Income Tax Evasion.   White worked for the Fort Peck Tribes as a temporary police office.   While doing so, White also proposed to implement a Youth Diversion Program to aid in the reduction of youths adjudicated by the tribal court. The Fort Peck Tribes paid White $40,000 to implement the program.   Instead of doing so, White spent the tribal funds in less than 30 days at casinos, restaurants, bars, a strip club, furniture stores, purchased a jeep, and expenditures wholly unrelated to the Youth Diversion Program.   White's bank account began with $32, and within approximately 20 days of receiving $40,000, he only had $897 remaining.   Analysis of the bank account also showed that White withdrew over $11,000 in cash in 20 days.

Not only did White steal money from the Fort Peck Tribe, but he then evaded taxes when doing so.   White did not report to the IRS $40,000 in income from the Fort Peck Tribe, and he claimed dependents when he did not provide the necessary care.   As a result, White paid $0 in tax, and he received a refund of $5,860.   If White provided an accurate return, he would have owed $4,324. White therefore owes $10,184 to the IRS based on his tax evasion.

## THE PLEA

The United States of America, by and through its counsel, Ryan G. Weldon
and Karla E. Painter, notifies the Court and opposing counsel that, although the
defendant is proceeding to trial, the United States notes for the record that a motion
for change of plea would have been more beneficial to the defendant than a
conviction following trial.   The defendant nevertheless proceeds to trial.   *See
Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## LENGTH OF TRIAL AND WITNESSES

The United States anticipates calling approximately 15 witnesses.   Its case-
in-chief should take approximately two days, subject to cross-examination.

## ANTICIPATED PROOF

### A. Willard White obtains $40,000 to develop a Youth Diversion Program.

Willard White was employed as a law enforcement officer for the Fort Peck
Tribes.   While working in that capacity, White decided to approach the Law and
Justice Committee.   While at the Committee in June of 2015, White stated that
"[t]he youth are losing their cultural identity through incarceration and separation
from their families."   White proposed creating a facility and various programs to
remedy his concerns.   The cost of setting up the program was $25,000, and White
would have the "site finished" and that "all criteria are met to create a total wrap

around service for our youth and their families."   White then explained he would require an additional fee of $15,000 to put the Family Justice Center contracts in place.

On July 13, 2015, White posted about the endeavor on Facebook, acknowledging his gratitude for having the opportunity to make a difference:

> Well today I accepted a lot of responsibility!   Feeling humble that full board passed a resolution for Ft. Peck Assiniboine & Sioux Tribe to move forward with a unique project that will serve many purposes but mainly to strengthen the core family values of our people!   I am feeling truly humble that the executive board trusts me to really work for our community!   Thank you Roxanne Gorneau, Grant Stafne, Dana Buckles, Patricia Iron Cloud, Marva Firemoon, Charlie Headdress, Pearl Hopkins, and Terry RattlingThunder for giving me this opportunity to better serve our Tribal communities!   Now the hard work!

## B. White spends the money in less than 30 days and provides little to no services for the Fort Peck Tribe.

Bank records show that Willard White had a balance in his bank account of $32.39 prior to depositing the Fort Peck Tribe's money.   The same day that White deposited the money, he went to Williston, North Dakota, and withdrew $305.00 from Whisper's, which is a local strip club.   White continued to spend the money, making purchases at Scheels, Game Stop, Boot Barn, Best Buy, Costco, Furniture World, and purchasing a jeep.   Additionally, White withdrew over $11,000 in cash, all of which occurred in less than three weeks.   The cash withdrawals and

spending sprees are outlined in chart format below:



//

//

//

//

//

//

//

//



Various members of the Tribe saw White posting on Facebook and spending the money, which prompted them to instruct White to return the leftover money. White never did so, and he never provided any services to the Tribe.    White later admitted on Facebook that he lied:

> Here is my resolution…I've seen so many children murdered and wronged as a police officer…my resolution is to forgive myself for all the children and families I let down!    That I was not strong enough to protect those children or families.    I really tried to think outside the box.    To look at programs that maybe could reunite those families! I failed and now I will always have to live with that reality . . .ok, I lied, I will never forgive myself.

6

**C. The investigation of White's 2015 return finds tax evasion of $10,184.**

On February 10, 2016, Willard White filed a 2015 tax return that omitted the $40,000 of income he received from the Fort Peck Tribe.    He likewise claimed dependents that he was not entitled to claim.    For example, White filed six returns, which were rejected because the claimed dependents were already claimed by someone else.    In doing so, White used three different children and social security numbers.    Finally, on the seventh attempt, White used an unclaimed child and social security number.    The graphic depiction of White's fraudulent attempt to claim dependents is outlined below:

//

//

//

//

//

//

//

//

//

//



White not only used children to obtain $40,000 from the Tribe, but he also used them to obtain a refund of $5,860 while paying $0 in federal tax.    White's tax evasion efforts result in him owing $10,184 to the IRS.

## EXHIBITS

1.    Bank Statements, Checks, and Deposits

2.    Timecards and Salary Checks

3.    Committee Reports and Tribal Resolutions

4.    Facebook posts

5.      Receipts from GameStop, Boot Barn, and Scheels

6.      Charts

## LEGAL ISSUES

**I.      A defendant may not offer self-serving hearsay under Fed. R. Evid. 801(d)(2).**

Rule 801(d)(2) defines a party opponent's statement as non-hearsay,

meaning it can be admitted as substantive evidence.    Fed. R. Evid. 801(d)(2).

The rules specifically provides:

> **(d)    Statements That Are Not Hearsay.**    A statement that meets
> the following conditions is not hearsay . . . .
>
>> **(2)    An Opposing Party's Statement.**    The statement is
>> offered against an opposing party and . . . was made by the
>> party in an individual or representative capacity.

Fed. R. Evid. 801(d)(2).

Importantly, a defendant may not offer his own statement into evidence.

*United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999).    Only the

government—*i.e.*, a party-opponent—may offer the defendant's statement.    *Id.*

This rule exists so that a defendant may not "introduce an exculpatory statement . .

. without subjecting himself to cross-examination."    *Id.*    This rule is well

recognized throughout evidentiary law.    *See, e.g., United States v. Marin*, 669

F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior

statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."); *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985) ("[N]o abuse of discretion lies in a district court's refusal to admit evidence of self-serving statements of innocence made by the defendant after the offense was discovered.").

White was interviewed by law enforcement.   As a party-opponent, only the government may introduce White's statement or portions of the statement. White, however, is prohibited from introducing his own statements made to law enforcement because he is not a party-opponent.   He therefore may only introduce exculpatory statements made by him if he takes the stand and subjects himself to cross-examination.

## II.    If deciding to take the stand, the United States may fully cross-examine the defendant.

A defendant never has to take the stand at trial.   *Carter v. Kentucky*, 450 U.S. 288, 299 (1981).   If choosing to remain silent, the Court will instruct the jury that it cannot draw an adverse inference against the defendant.   *Id.*

But when a defendant decides to take the stand, things change significantly.

Just like any other witness, a defendant choosing to take the stand subjects himself to cross-examination that impeaches his credibility.   *Portuondo v. Agard*, 529 U.S. 61, 70 (2000).

> Rule 608(b) governs impeachment of the defendant's credibility:
>
> [S]pecific instances of a witness's conduct in order to attack or support the witness's character for truthfulness . . . may, on cross-examination, . . . be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness . . . ."

Importantly, it is irrelevant whether the untruthful conduct resulted in criminal conviction.   Fed. R. Evid. 608, *Advisory Committee Notes* (1972).   The existence of the conviction only matters under Rule 609, but not Rule 608.   *Compare* 609(a) (requiring conviction) *with* Fed. R. Evid. 608 (not requiring conviction).

When relying on Rule 608, a prosecutor may not use impeachment as a ploy to submit substantive evidence that is otherwise inadmissible.   *United States v. Tomblin*, 46 F.3d 1369, 1388-1389 (5th Cir. 1995).   The government is allowed, however, to inquire into conduct that involves other untrustworthy acts bearing directly on the defendant's credibility, including other acts of "perjury, fraud, swindling, forgery, bribery, and embezzlement."   *Id.*; *see also United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981) (explaining trial court must apply safeguards of Rule 403, but it "may not foreclose a legitimate inquiry into a witness's credibility"); *United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980)

(defendant impeached with previous falsehoods); *United States v. Jackson*, 882 F.2d 1444, 1447-1448 (9th Cir. 1989) (defendant impeached with previous disbarment).    If White decides to take the stand, the government will surely test his credibility consistent with the direction of Rule 608.

Notably, the government need not provide notice to the Court, or to the defendant, about which evidence it will rely upon should the defendant take the stand at trial.    *Tomblin*, 46 F.3d at 1388-1389; *compare* Fed. R. Evid. 608 (not requiring notice) *with* Fed. R. Evid. 404(b)(2)(A) (requiring "reasonable notice"). The United States has nevertheless provided marked exhibits to the defense that identify tax fraud in 2017 (exhibits 70-75) and bank fraud in 2017 (exhibits 100-103.    Even though not required to provide such notice, the United States has done so by this trial brief and disclosing the trial exhibits.

### III.    If character evidence is offered, it must be done properly by the defense.

Character evidence may only be offered under Fed. R. Evid. 404 and 405. Under the rule, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."    Fed. R. Evid. 404(a).    In a criminal case, the defense "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it."    Fed. R. Evid. 404(2)(A).

"Once the admissibility of character evidence in some form is established under this rule, reference must then be made to Rule 405, which follows, in order to determine the appropriate *method* of proof."   Fed. R. Evid. 404, *Advisory Committee Notes* (1972) (emphasis added).   The rule outlining the method provides as follows:

> **By Reputation or Opinion.**   When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

Fed. R. Evid. 405(a).

The defense might want to offer specific instances of conduct a trial to demonstrate a character trait.   This is so because "evidence of specific instances of conduct is the most convincing."   Fed. R. Evid. 405, *Advisory Committee Notes* (1972).   But such an approach is prohibited.   *See, e.g., United States v. Keiser*, 57 F.3d 847, 856-857 (9th Cir. 1995).   The rules take such an approach because self-interested specific instances "possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."   Fed. R. Evid. 405, *Advisory Committee Notes*.

The parties will be at trial—not sentencing.   Thus, if White chooses to offer character evidence, he must do so consistent with the method of proof identified

under Rule 405.   He may question the character witness about White's reputation in the community for an identified character trait.   The United States is then allowed to inquire into specific instances that challenge that opinion, but the specific instances inquiry is reserved for cross-examination alone.   Fed. R. Evid. 405(a).

### IV.   The defense has provided no reciprocal discovery.

Mr. White has discovery obligations to the United States, just like the United States does to Mr. White.   *See, e.g.,* Fed. R. Crim. P. 16(b)(1)(A).   To date, the United States has received no reciprocal discovery from Mr. White.   In particular, the United States has requested any documents or objects that demonstrate Mr. White completed any work for the Fort Peck Tribe.   No such documents have been provided or made available to the United States.   The United States will object to the admission of any documents not provided in discovery.

### V.   The Court must address the forfeiture proceedings prior to the jury deliberating.

The United States has alleged a forfeiture of a money judgment against the defendant.   This requires a two-step process:   (1) the jury determines guilt or innocence of the defendant on the counts of the indictment; and, (2) if guilty, then either the Court or the jury must decide the forfeiture issue.   *See, e.g.* Fed. R.

Crim. P. 32.2(b)(5).   Importantly, timing matters when deciding who will decide forfeiture:

> In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine *before the jury begins deliberating* whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

Fed. R. Crim. P. 32.2(b)(5)(A) (emphasis added).   This provision places an affirmative duty on the district court to determine if either party requests a jury trial, and to do so "before the jury retires" for a determination of guilt or innocence.   *United States v. Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013).

DATED this 2nd day of June, 2019.

KURT G. ALME
United States Attorney


*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U. S. Attorney


/s/ *Karla E. Painter*
KARLA E. PAINTER
Assistant U.S. Attorney

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached trial brief

contains 2,611 words, excluding the caption and certificate of compliance.


KURT G. ALME
United States Attorney


*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U. S. Attorney


/s/ *Karla E. Painter*
KARLA E. PAINTER
Assistant U.S. Attorney