**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT  59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT  59403**
**Phone:  (406) 761-7715**
**FAX:  (406) 453-9973**
**E-mail:   Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **WILLARD WILSON WHITE III,**  Defendant. | CR 18-97-GF-BMM  **OFFER OF PROOF** |

1

## THE CHARGE

The defendant, WILLARD WILSON WHITE III, is charged by indictment in count I with Wire Fraud, in violation of 18 U.S.C. § 1343, count II with Theft from an Indian Tribal Organization, in violation of 18 U.S.C. § 1163, and count III with Income Tax Evasion, in violation of 26 U.S.C. § 7201.

## PLEA

The defendant, WILLARD WILSON WHITE III, will enter a voluntary plea of guilty to counts I and III in the indictment. The motion for change of plea filed with the Court represents, in the government's view, the most favorable disposition of the case against the defendant. *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## ELEMENTS

The defendant will plead guilty to count I because the defendant is in fact guilty of Wire Fraud. In pleading guilty to count I, the defendant acknowledges that:

> **First**, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
>
> **Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and,

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant will also plead guilty to count III because the defendant is in fact guilty of Income Tax Evasion. In pleading guilty to count III, the defendant acknowledges that:

**First**, the defendant owed more federal income tax for the calendar year 2015 than was declared due on the defendant's income tax return for that calendar year;

**Second**, the defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return;

**Third**, the defendant made an affirmative attempt to evade or defeat such additional tax; and,

**Fourth**, in attempting to evade or defeat such additional tax, the defendant acted willfully.

## PENALTY

Count I in the indictment charges the crime of Wire Fraud, in violation of 18 U.S.C. § 1343. Count I carries a maximum term of imprisonment of 20 years, a $250,000 fine, up to three years supervised release, and a $100 special assessment. Count III in the indictment charges the crime of Income Tax Evasion, in violation of 26 U.S.C. § 7201. Count III carries a maximum term of imprisonment of five years, a $100,000 fine, costs of prosecution, and three years of supervised release.

The defendant agrees to be responsible for complete restitution. 18 U.S.C. § 3663(a)(3). The defendant, however, retains the right to argue to the sentencing Court that the loss amount and restitution is less than stated by the United States. The United States estimates the total amount of restitution is approximately $40,000 to the Fort Peck Tribe. The defendant also agrees to pay restitution to the Internal Revenue Service in the total amount of $18,050.00, upon verification of the amount of the refunds received, pursuant to 18 U.S.C. § 3663(a)(3).

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

### A. Willard White obtains $40,000 to develop a Youth Diversion Program.

Willard White was employed as a law enforcement officer for the Fort Peck Tribes. While working in that capacity, White decided to approach the Law and Justice Committee. While at the Committee in June of 2015, White stated that "[t]he youth are losing their cultural identity through incarceration and separation from their families." White proposed creating a facility and various programs to remedy his concerns. The cost of setting up the program was $25,000, and White would have the "site finished" and ensure that "all criteria are met to create a total wrap around service for our youth and their families." White then explained he

would require an additional fee of $15,000 to put the Family Justice Center contracts in place.

On July 13, 2015, White posted about the endeavor on Facebook, acknowledging his gratitude for having the opportunity to make a difference:

> Well today I accepted a lot of responsibility! Feeling humble that full board passed a resolution for Ft. Peck Assiniboine & Sioux Tribe to move forward with a unique project that will serve many purposes but mainly to strengthen the core family values of our people! I am feeling truly humble that the executive board trusts me to really work for our community! Thank you Roxanne Gorneau, Grant Stafne, Dana Buckles, Patricia Iron Cloud, Marva Firemoon, Charlie Headdress, Pearl Hopkins, and Terry RattlingThunder for giving me this opportunity to better serve our Tribal communities! Now the hard work!

### B. White spends the money in less than 30 days and provides little to no services for the Fort Peck Tribe.

Bank records show that Willard White had a balance in his bank account of $32.39 prior to depositing the Fort Peck Tribe's money. The same day that White deposited the money, he went to Williston, North Dakota, and withdrew $305.00 from Whisper's, which is a local strip club. White continued to spend the money, making purchases at Scheels, Game Stop, Boot Barn, Best Buy, Costco, Furniture World, and purchasing a jeep. Additionally, White withdrew over $11,000 in cash, all of which occurred in less than three weeks. The cash withdrawals and spending sprees are outlined in chart format below:



//

//

//

//

//

//

//

//

6



Various members of the Tribe saw White posting on Facebook and spending the money, which prompted them to instruct White to return the leftover money. White never did so, and he never provided any services to the Tribe. White later admitted on Facebook that he lied:

> Here is my resolution…I've seen so many children murdered and wronged as a police officer…my resolution is to forgive myself for all the children and families I let down! That I was not strong enough to protect those children or families. I really tried to think outside the box. To look at programs that maybe could reunite those families! I failed and now I will always have to live with that reality . . .ok, I lied, I will never forgive myself.

//

//

**C. The investigation of White's 2015 return finds tax evasion of $10,184.**

On February 10, 2016, Willard White filed a 2015 tax return that omitted the $40,000 of income he received from the Fort Peck Tribe. He likewise claimed dependents that he was not entitled to claim. For example, White filed six returns, which were rejected because the claimed dependents were already claimed by someone else. In doing so, White used three different children and social security numbers. Finally, on the seventh attempt, White used an unclaimed child and social security number. The graphic depiction of White's fraudulent attempt to claim dependents is outlined below:

//

//

//

//

//

//

//

//

//

//



White not only used children to obtain $40,000 from the Tribe, but he also used them to obtain a refund of $5,860 while paying $0 in federal tax. White's tax evasion efforts result in him owing $10,184 to the IRS.

### D. The United States has jurisdiction over the offense.

The investigation determined that wire communications occurred by way of checks and wires to and from Poplar, Wolf Point, Box Elder, Havre, and elsewhere, in the District of Montana, to and from Minneapolis, in the District of Minnesota, to and from Williston and Minot, in the District of North Dakota, and to and from Seattle, in the Western District of Washington. Interstate wires therefore occurred throughout the scheme to defraud.

DATED this 9th day of June, 2019.

                                  KURT G. ALME
                                  United States Attorney

                                  */s/ Ryan G. Weldon*
                                  RYAN G. WELDON
                                  Assistant U.S. Attorney